IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONDRA JENNINGS,       )<br>Plaintiff.                            )<br>                                      )<br>v.                                    )<br>LOAN CARE, LLC,             )<br>IMPAC MORTGAGE CORP., )<br>THE REALTY GROUP,        )<br>Defendants.                       )<br>_____ ) | Civil No. 1:18-cv-5088-SCJ |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, PLAINTIFF, DONDRA JENNINGS, hereinafter "Jennings," by and through his undersigned attorney and files this Amended Complaint for Negligent Misrepresentation, Wrongful Foreclosure, Intentional Infliction of Emotional Distress, Wrongful Eviction, and Negligence against Defendants, LOAN CARE, LLC, hereinafter "servicer," IMPAC MORTGAGE CORP. hereinafter "mortgagee," and THE REALTY GROUP, hereinafter "realtor" and states in support thereof:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to diversity of jurisdiction and the amount in controversy is over $75,000.00.

2. Venue is proper in in this district pursuant to 28 U.S.C. §1391(b) because the registered agent of two defendants reside at 289 S Culver St, Lawrenceville, Gwinnett County, GA, 30046-4805.

## PARTIES

3. Plaintiff, Dondra Jennings hereinafter "Jennings" has resided at or owned the property for more than 20 years and is the occupier and possessor of the property located at 917 Kite Lake Trail, Fairburn, Fayette County, Georgia.

4. Defendant, servicer, is the servicer of loan no. 0020344255 associated with 917 Kite Lake Trail, Fairburn, Fayette County, Georgia and is a foreign corporation, whose principal place of business is 601 RIVERSIDE AVENUE, JACKSONVILLE, FL, 32204, and whose registered agent can be served at 289 S Culver St, Lawrenceville, GA, 30046-4805.

5. Defendant, mortgagee, is the owner of the note and mortgage for the property located at 917 Kite Lake Trail, Fairburn, Fayette County, Georgia and is a foreign corporation whose principal place of business is 19500 JAMBOREE ROAD, Irvine, CA, 92612, and whose registered agent can be served at 289 S Culver St, Lawrenceville, GA, 30046-4805.

6. Defendant, realtor, is a broker and or real estate company not registered with the State of Georgia whose known address and can be served at Mary Jarman, 5833 Stewart Parkway, Suite 101, Douglasville, GA 30135.

## FACTUAL ALLEGATIONS

7. Jennings has been the owner and possessor of his home located at 917 Kite Lake Trail since March 19, 1998.

8. On December 5, 2017, Jennings property was foreclosed on without proper notice as required by Georgia law, O.C.G.A. § 44-14-162.2.

9. Servicer and Mortgagee seized control and possession of the property, by and through their agent, Realtor, changed the locks and put a lock box on the door to prevent entry by Jennings on or about December 5, 2017.

10. Servicer and Mortgagee then, by and through their agent Realtor, continued to exercise ownership of the property and wrongfully listed the property for sale and allowed access to Jennings' property without legal authority and without his permission.

11. On February 9, 2018, servicer and mortgagee continued to exercise ownership, possession and control of the property and recorded a Deed Under Power regarding the property, further evidencing the foreclosure.

Attached hereto and made a part hereof as Exhibit A is the Deed Under Power on February 9, 2018.

12. Jennings was able to communicate with Servicer and advise of the illegality of its actions as he was not afforded the proper statutory notice.

13. Said foreclosure was voluntarily rescinded on March 5, 2018. Attached hereto and made a part hereof is the Affidavit Rescinding Foreclosure Sale as Exhibit B.

14. Defendants, servicer and mortgagee, reported to the consumer reporting agencies that Jennings had a foreclosure from December 2017 through currently, upon information and belief. Attached hereto and made a part hereof is an email from servicer acknowledging that his credit had not been corrected as late as July 30, 2018 as Exhibit C.

15. Jennings was denied sole possession of his property from December 5, 2017 through March 5, 2018 as evidenced by defendants' behavior and actions.

16. Realtor wrongfully and illegally entered the property unlawfully and without permission from Jennings and changed the locks on January 19, 2018.

## COUNT I
## NEGLIGENT MISREPRESENTATION
### (as to Defendants Impac and Loancare)

17. Jennings re-alleges and incorporates by reference paragraphs 1-16 above.

18. Defendants, servicer and mortgagee, committed Negligent Misrepresentation.

19. Servicer is the agent of Mortgagee.

20. Mortgagee is equally responsible for the actions of Servicer.

21. Servicer, by and through their representatives, negligently supplied false information to Jennings that his property would not be foreclosed upon until the reinstatement numbers were accurate and correct.

22. Jennings complained on multiple occasions, by phone, of inaccurate reinstatement figures that included wrongful foreclosure fees and costs, as well as mortgage payments during the time that Jennings was not the owner of the property due to the wrongful foreclosure.

23. Servicer negligently and falsely advised Jennings that fees associated with the wrongful foreclosure on December 5, 2017 would be rescinded and excluded from his reinstatement figures.

24. Servicer negligently and falsely advised that Jennings credit would be corrected to reflect that his property had not been foreclosed upon.

25. On March 16, 2017, Carin White, employed by servicer, advised Jennings that the foreclosure would be postponed and corrections to his

credit "were in progress" after he called and complained about the reinstatement figures and the pending foreclosure email he received.

26. On or about August 30, 2017, Jennings spoke with Rachel, employed by servicer, and was advised by phone that his home would not be foreclosed upon and that his credit would be corrected, and the reinstatement figures would be revised to reflect the changes.

27. Jennings reasonably relied on servicer's misrepresentations that his home would not be foreclosed upon.

28. Jennings reasonably relied on servicer's misrepresentations that his credit would be corrected.

29. Jennings reasonably relied on servicer's misrepresentations that all fees and costs, including but not limited to mortgage fees and attorneys fees, during the time of the wrongful foreclosure would be removed from the reinstatement amount.

30. Servicer and mortgagee did not remove said fees and costs and continued to charge Jennings for the wrongful foreclosure, mortgage payments during the time he was denied sole possession and ownership and, as a result, never provided accurate reinstatement figures.

31. In addition, servicer continued attempting to foreclose upon Jennings by sending harassing communications and Notice of Acceleration and

Foreclosure documents on March 2, 2018; May 18, 2018; and September 27, 2018. Attached hereto and made apart hereof are the notices as composite Exhibit E.

32. Jennings relied on the above misrepresentations to his detriment and did not reinstate the loan as he was advised that the correct figures were forthcoming.

33. Servicer and mortgagee continued to bill Jennings' monthly mortgage (that had increased while he was not in possession from $670.99 to $2,637.58) and the wrongful foreclosure fees preventing him from reinstating his loan at a more reasonable amount as provided in the November 2017 statement.

34. Due to the foreclosure on Jennings' credit, he was not able to utilize other means to resolve the mortgage issue as his credit was impacted by the foreclosure status of the mortgage.

35. Servicer and mortgagee benefitted from this deception by billing Jennings at a monthly mortgage of $2,637.58 and ensuring that he would not be able to reinstate the loan.

36. Jennings has suffered economic and non-economic injury as he relied on servicer's negligent misrepresentations and bad faith communications

that the reinstatement figures would not include fees and costs associated with the wrongful foreclosure to his detriment.

37. As a result of the false and negligent misrepresentations, Jennings' home was subject to foreclosure on November 6, 2018 for the fourth time in less than one year.

38. As a result of the false and negligent misrepresentations, Jennings' credit has been affected negatively and he has been denied credit as a result of the false reporting on his credit.

39. As a result of the false and negligent misrepresentations, Jennings has suffered monetary damages in excess of $148,000.00. Attached hereto and made a part hereof is the Loan Modification Agreement as Exhibit D.

40. As a result of the false and negligent misrepresentations, Jennings had to hire this firm and pay a reasonable fee for representation and to protect his interests.

## COUNT II
## WRONGFUL FORECLOSURE

41. Jennings re-alleges and incorporates herein paragraphs 1-16.

42. Defendants, servicer and mortgagee, owed a legal duty of good faith and fair dealing with Jennings.

43. Defendants, servicer and mortgagee, owed a legal duty to follow the laws of Georgia and provide proper notice to Jennings prior to foreclosing on his property.

44. Defendants, servicer and mortgagee, owed a legal duty of ordinary care to Jennings in their communications and transactions with Jennings.

45. Defendants foreclosed on Jennings home on December 5, 2017.  See Exhibit A.

46. Defendants breached their duty to Jennings to follow the laws of Georgia and to provide proper notice according to Georgia law, O.C.G.A. § 44-14-162.2.

47. Defendants breached their duty of good faith and fair dealing with Jennings by continuously providing him false information and misrepresenting their actions; continuously advising that they would correct the inaccurate credit reporting and reinstatement figures; continuously reassuring him that his property would not be foreclosed upon; and failing to remove costs and fees associated with the unlawful foreclosure.

48. Defendants breached their duty of ordinary care by failing to communicate true and correct information; failing to properly notice the December 5, 2017 foreclosure; failing to accurately report credit

information and correct inaccurate information; failing to properly handle consumer complaints; failing to act reasonably and in accordance with servicer standards and guidelines.

49. Jennings had the ability to reinstate the loan in November 2017 but was denied the opportunity to do so due to Defendants' wrongful foreclosure and failure to correct the reinstatement figures.

50. Jennings was deprived of sole possession and ownership of his property from December 5, 2017 until March 5, 2018.

51. The above breaches of duty have caused economic damages exceeding $150,000.00 and non-economic injury to Jennings to be determined by the enlightened conscious of the jury and continues to cause injury.

52. Jennings has had to retain the services of this firm at a reasonable rate to protect her interests.

## **COUNT III**
## **TRESPASS**
## **VIOLATION OF O.C.G.A. § 51-9-1**
### **(as to all defendants)**

53. Jennings re-alleges and incorporates herein paragraphs 1-16.

54. Defendants, mortgagee and servicer, wrongfully foreclosed on Jennings property on December 5, 2017.

55. Defendants, mortgagee, servicer and realtor, violated O.C.G.A. § 51-9-1 by wrongfully taking possession of Jennings property without legal authority and permission.

56. Defendants, mortgagee, servicer and realtor, violated O.C.G.A. § 51-9-1 by wrongfully interfering with Jennings right to exclusive use and benefit of his property.

57. Realtor wrongfully entered the property of Jennings without permission, listed the property for sale without permission, and took possession of the property without Jennings' permission.

58. None of the defendants had permission or authority to enter, to possess, or to list the property of Jennings for sale from December 5, 2017 through current.

59. The locks to Jennings property were changed by Realtor in January 2018 without permission from Jennings and without authority preventing Jennings entry and sole possession of his property.

60. Unknown individuals were allowed to enter Jennings' property without permission and authority as the property was listed for sale by defendants and a lockbox permitting unlawful entry was on the property.

61. Defendants did not lawfully foreclose, possess a writ of possession and did not have authority or permission from Jennings to enter the premises or prevent Jennings from having possession.

62. Jennings was damaged because he was denied exclusive possession of his property; he had property damage to his property; he was denied exclusive enjoyment and privacy of his property; and his reputation was damaged due to the status of the property as a foreclosed property.

63. Jennings was damaged as he was emotionally distraught to learn that multiple unknown individuals had access and entry to his property, to learn that his privacy had been violated and that his property had been damaged.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (as to Defendant Servicer)

64. Jennings re-alleges paragraphs 1 through 16 and hereby incorporates them herein by reference as if stated verbatim.

65. This is an action for damages for intentional infliction of emotional distress.

66. Servicer has attempted multiple foreclosures against Jennings despite having knowledge and notice of credible issues with the reinstatement figures and amounts due. See attached composite exhibit E.

67. Jennings has made multiple requests for the reinstatement figures to be corrected so he can reinstate his loan.

68. Servicer has reassured Jennings on multiple occasions that they would correct figures and remove fees and costs associated with the wrongful foreclosure.

69. Despite these reassurances from servicer, servicer refuses to correct the reinstatement figures and continues to include attorneys' fees for the wrongful foreclosure on December 5, 2017, continues to include mortgage fees for the time period in which Jennings did not have exclusive possession neither title to the property, and continues to cause him emotional stress regarding the status of his property, credit and reputation.

70. Defendant continues to conduct itself maliciously and in a hostile manner by stating that it will not foreclose and then initiating multiple foreclosure proceedings against Jennings.

71. Defendant's conduct above towards Jennings is intentional.

72. Defendant's conduct above towards Jennings is reckless.

73. Defendant's conduct above is extreme and outrageous and shocks the conscience of the public as it is continuously subjecting Jennings to

emotional and financial distress unnecessarily and is in their control to correct and prevent.

74. Defendant's outrageous conduct is the proximate cause of Jennings' severe emotional distress, anxiety, and mental anguish.

**COUNT V**

**ORDINARY NEGLIGENCE**

**(as to all defendants)**

75. Jennings re-alleges paragraphs 1 through 16 and hereby incorporates them herein by reference as if stated verbatim.

76. This is an action in ordinary negligence.

77. Defendants had a duty to operate with ordinary diligence, to the degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances.

78. Defendants all had a duty to Jennings to provide accurate information to reporting agencies, to operate in good faith, to provide notices to the appropriate address, to have legal authority to enter and take possession of his property, to follow all state and federal laws.

79. Defendants failed to operate with ordinary diligence as stated above and to be proven at trial.

80. As a result, Defendants are liable for damages caused by such breaches of ordinary negligence.

81. Defendants committed additional negligent acts and omissions to be proven by the facts and evidence at trial.

82. Jennings has suffered damages, pain, mental anguish and emotional distress, and continues to be damaged and harmed as a direct and proximate result of the breach of legal duties owed to Jennings in the amount to be determined by the enlightened conscious of the jury.

## COUNT VI
## NOMINAL AND GENERAL DAMAGES UNDER O.C.G.A. §51-12-2

83. Jennings re-alleges paragraphs 1 through 82 and hereby incorporates them herein by reference as if stated verbatim.

84. As a direct and proximate result of Defendants' violations of law including negligence, intentional infliction of emotional distress, negligent misrepresentation, wrongful foreclosure, and trespass, as stated herein above, Jennings has suffered painful injuries.

85. As a direct and proximate result of Defendants' violations of law including negligence, intentional infliction of emotional distress, negligent misrepresentation, wrongful foreclosure, and trespass as stated herein above, Jennings has suffered conscious mental pain and suffering.

86. As a direct and proximate result of Defendants' violations of law including negligence, intentional infliction of emotional distress, negligent misrepresentation, wrongful foreclosure, and trepass, as stated

herein above, Jennings has suffered severe emotional pain and distress.

87. As a direct and proximate result of Defendants' wrongful foreclosure, negligence, and wrongful eviction, as stated hereinabove, Jennings suffered nominal damages.

88. By reason of the foregoing, Jennings is entitled to recover compensatory damages from defendant for past, present and future emotional pain and suffering, and loss of quality of life in such an amount that shall be shown by the evidence and determined by the enlightened conscience of the jury.

89. By reason of the foregoing, Jennings is entitled to recover nominal damages from Defendants for injuries sustained in such an amount as shall be shown by the evidence and proven at trial and by the enlightened conscience of the jury.

## COUNT VII
## PUNITIVE DAMAGES

90. Jennings re-alleges paragraphs 1 through 82 and hereby incorporates them herein by reference as if stated verbatim.

91. This is an action for punitive damages pursuant to O.C.G.A. §51-12-5.1.

92. Defendants by and through its employees acted intentionally toward Jennings.

93. Defendants' actions showed a conscious indifference toward the

consequences.

94. Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care.

95. Defendants acted with the specific intent to cause harm.

96. Jennings has suffered tremendously at the hands of Defendants and is entitled to punitive damages to be determined by the enlightened conscious of the jury.

## DEMAND FOR JURY TRIAL

97. Jennings hereby makes demand for a jury trial in this matter.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, Dondra Jennings, hereby requests and prays that this Honorable Court:

A. That summons issue and service be perfected upon Defendants requiring them to appear in this Honorable Court within the time prescribed by Federal law and answer this Complaint; and,

B. Order a trial by jury; and,

C. Award Plaintiff general, nominal, statutory, special and punitive damages; and,

D. Award Plaintiff's attorney's fees and costs pursuant to Federal and Georgia law; and,

  E. Grant such other and further relief, as the court shall deem necessary and proper.

  DATED 7th day of January 2019.

              */s/ Vera June Starks*

              Vera June Starks
              Starks Law LLC
              Georgia Bar 935496
              PO Box 77054
              Atlanta, GA 30357
              404-445-8755 (p)
              admin@starkslawatlanta.com

## **CERTIFICATE OF COMPLIANCE**

  This is to certify that the foregoing was prepared using Times New Roman 14 pt font in compliance with Local Rule 5.1 (B).

              */s/ Vera June Starks*
              Vera June Starks

## **CERTIFICATE OF SERVICE**

I hereby certify that I am over the age of 18 and that on January 7, 2019, the foregoing notice was filed with the Clerk by uploading it to the CM/ECF system for filing and service and the foregoing was emailed to: Bret Chaness, Esq. at bchaness@rubinlublin.com as counsel for Loan Care, LLC and Impac Mortgage Corp. and to Charles Hale Van Horn, esq. at cvanhorn@bfvlaw.com and notices@bfvlaw.com as counsel for The Realty Group.

*/s/ Vera June Starks*_____
Vera June Starks